DECISION. *Page 2 
{¶ 1} David Patrick appeals his conviction for aggravated robbery with specifications and robbery with specifications. Because Patrick was sentenced under unconstitutional provisions, we must remand the case to the trial court for resentencing. In all other respects, we affirm the judgment of the trial court.
 {¶ 2} On October 13, 2004, a man entered the Harvest Drive-Thru in Cheviot, Ohio, and told Lori Brown, a drive-through employee, to give him money. According to Brown, the man had a shiny object in his shirt. When Brown hesitated, the man told her that he would kill her if she did not give him money. While Brown was giving the money to the robber, Bryan Lang pulled into the drive-through. When he realized that Brown was in trouble, Lang began to get out of his car. The man approached Lang, pointed a gun at him, and said, "Don't move, or I'll kill you." The man then fled from the drive-through.
 {¶ 3} Lang followed the man and saw him get into a gray station wagon. Lang then called the police and returned to the drive-through as requested by the dispatcher. Police officer Jeff Patton arrived to take statements from Brown, Lang, and Jennifer Kirchner, another drive-through employee. While Patton was at the drive-through, he was notified that a car matching the description given by Lang had wrecked nearby. Lang was taken to the scene of the car accident, where he identified the car as similar to the one that the man had gotten into after leaving the drive-through.
 {¶ 4} The station wagon was registered to Patrick, and his driver's license was found in the front passenger area of the car. Approximately 24 hours after the robbery, Patrick called the Cheviot police to report that his car had been stolen. *Page 3 
Police officers responded to the bar where Patrick had made the call and arrested him.
 {¶ 5} An array of photographs that included Patrick's license picture was presented to Brown, Kirchner, and Lang. Brown was unable to identify any of the individuals in the array. But Kirchner and Lang picked out Patrick's photograph and identified him as the robber. At trial, Brown identified Patrick as the robber, stating that she remembered "his eyes and how dark his hair was and his height."
 {¶ 6} Patrick was indicted for aggravated robbery and robbery. Both counts included firearm specifications. At trial, Patrick presented three alibi witnesses who testified that Patrick had been at the Crow's Nest, a bar, at the time of the robbery.
 {¶ 7} At the conclusion of the trial, the jury found Patrick guilty of aggravated robbery, robbery, and the specifications to those counts. The specifications were merged for purposes of sentencing. The trial court sentenced Patrick to ten years for aggravated robbery and eight years for robbery. The prison terms were to be served consecutively and were also made consecutive to the three-year term for the merged gun specifications.
 {¶ 8} In his first assignment of error, Patrick asserts that the conviction on the gun specifications was not supported by sufficient evidence.
 {¶ 9} To prove that Patrick was guilty of a firearm specification, the state had to present evidence that he had "had a firearm on or about [his] person or under [his] control while committing the offense and displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense."[1] And the state had to prove that the gun was operable at the time of the offense.[2] "[S]uch proof can be established beyond a reasonable doubt by the *Page 4 
testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime."[3]
 {¶ 10} Patrick argues that neither Brown nor Kirchner affirmatively identified the object that the robber had as a gun. But Lang did identify the object as a gun. And according to both Lang and Brown, the robber had threatened to kill them if they did not comply with his demands. We conclude that the threats and Lang's identification of the gun were sufficient to prove the firearm specifications.[4] The first assignment of error is overruled.
 {¶ 11} Patrick's second assignment of error is that the trial court erred when it allowed the jury venire to be tainted by comments made by a prospective juror.
 {¶ 12} During voir dire, prospective juror Valdez stated that she had attended high school with Patrick, approximately 12 years earlier. The prosecutor asked Valdez, "Would the fact that you know him influence whether or not you could decide the case fairly against him?" According to the transcript, Valdez replied, "I don't know. I just know he was — just don't want to be on the case." Based on that comment, the trial court excused Valdez from the jury.
 {¶ 13} After the court announced that Valdez had been excused from service, defense counsel asked to approach the bench. According to counsel, he had heard Valdez say that there was "some sort of problem." The court asked Valdez to approach the bench and, at a sidebar conference, said, "I need to ask you something. I didn't hear. You said something about — what did you say and I couldn't hear you? What did you say there, something about you knew him in high school?" Valdez replied, "I knew him in high school and he was a bad kid." Based on that statement, defense counsel requested that the entire jury panel be dismissed. The trial court denied the request, stating, "First of all, what she said, you couldn't even hear. I had *Page 5 
to ask her up here and I couldn't even hear it because of that. The other thing is that she was saying that that was 12 years ago."
 {¶ 14} "Determination of issues raised in voir dire in criminal cases has long been held to be within the discretion of the trial judge."[5]
In this case, we conclude that Patrick has not demonstrated that the trial court abused its discretion. Because the court reporter did not hear the comment, it is unclear whether Valdez's original comment was that Patrick was a "bad kid," or whether that comment was made in response to the court's questions during the sidebar discussion. And defense counsel made no request to separately question the other prospective jurors to determine whether they had heard the comment and whether the comment would have affected their impartiality. The second assignment of error is overruled.
 {¶ 15} In his third assignment of error, Patrick asserts that the trial court erred when it admitted prejudicial evidence of his criminal history.
 {¶ 16} Prior to the trial, Patrick's defense counsel requested that portions of Patrick's statement to police officer Edward Taylor be redacted because Patrick had referred to his criminal history. The trial court granted the request, and defense counsel volunteered to edit the digital recording of the statement. But when the edited statement was played for the jury, the following comment by Patrick was included in the recording: "[Y]ou're going to tell me that a person's going to walk in — been arrested 40 times, 50 times — been to the penitentiary four times — going to walk in * * * and just say give me your money? * * * Look at me. One shot of my face, bam, you've got me." Apparently, defense counsel had inadvertently left the statement on the recording. The trial court overruled defense counsel's request to have the comment stricken from the record. *Page 6 
 {¶ 17} Patrick argues that the evidence of his criminal history was inadmissible under Evid.R. 404. The state counters that because Patrick framed the statement as a hypothetical one, the trial court did not abuse its discretion in refusing to strike it. We disagree. In the context of the police interview, it is clear that Patrick was referring to himself. The statement should have been stricken by the trial court. But we conclude, given the other overwhelming evidence of Patrick's guilt, that the error was harmless. The third assignment of error is not well taken.
 {¶ 18} Patrick asserts in his fourth assignment of error that he was denied the effective assistance of counsel. To prevail on his claim that his counsel was ineffective, Patrick must demonstrate that his counsel's performance was deficient and that, absent his counsel's errors, the result of the trial would have been different.[6]
 {¶ 19} Patrick contends that his counsel's performance was deficient because counsel did not move to suppress the evidence of the photographic identifications of Patrick. We disagree.
 {¶ 20} If a defendant demonstrates that an identification procedure was unnecessarily suggestive, the trial court must determine "whether the procedure was so unduly suggestive as to give rise to a substantial likelihood of mistaken identification."[7] We conclude that the identification procedure employed in this case was not unduly suggestive. The array included photographs of men with features similar to those of Patrick. And Officer Taylor's statement to Kirchner and Lang that a suspect's photograph was included in the array was not unduly suggestive, given that he had also told them that the police "might have the wrong person." Even if the trial court had determined that the identification procedure was unduly suggestive, it *Page 7 
is unlikely that it would have concluded that it was unreliable.[8]
Both Kirchner and Lang testified that they were certain of their identifications, which had been made shortly after the robbery. Patrick has not demonstrated that his counsel's performance was deficient. The fourth assignment of error is overruled.
 {¶ 21} In his fifth assignment of error, Patrick claims that the trial court erred when it failed to merge the robbery and aggravated robbery into one conviction for purposes of sentencing. Although a defendant may be indicted for two or more allied offenses of similar import, he may be convicted of and sentenced for only one.[9] In State v. Palmer, we held that robbery and aggravated robbery were not allied offenses of similar import.[10] We decline to depart from that holding, which was based on the Ohio Supreme Court's decision in State v. Rance.[11] The fifth assignment of error is overruled.
 {¶ 22} Patrick's sixth assignment of error is that his conviction was against the manifest weight of the evidence. When reviewing whether a judgment was against the manifest weight of the evidence, we must determine whether the jury clearly lost its way and created a manifest miscarriage of justice.[12] In this case, the credibility of the eyewitnesses and the alibi witnesses was for the jury to determine. Having reviewed the record, we conclude that the jury's guilty verdicts were not against the manifest weight of the evidence. The sixth assignment of error is not well taken.
 {¶ 23} The seventh assignment of error is that the cumulative effect of errors in the trial court deprived Patrick of a fair trial. Although the trial court erred when it did not strike Patrick's comment about his criminal history, the error was *Page 8 
harmless. And standing alone, the error did not deprive Patrick of a fair trial. The seventh assignment of error has no merit.
 {¶ 24} Patrick's final assignment of error is that the trial court erred when it made unconstitutional findings prior to sentencing him. InState v. Foster, the Ohio Supreme Court held that R.C. 2929.14(C), which governs the imposition of maximum sentences, and R.C. 2929.14(E), which governs the imposition of consecutive sentences, are unconstitutional.[13] The court severed those provisions from Ohio's sentencing scheme, and trial courts now have discretion to impose a sentence within the statutory range for a given offense without making findings or giving reasons for the sentence.[14] Because Patrick was sentenced under unconstitutional provisions, we must sustain the eighth assignment of error.
 {¶ 25} We vacate Patrick's sentence and remand the case to the trial court for resentencing in accordance with the law. In all other respects, we affirm the judgment of the trial court.
Sentence vacated and cause remanded.
CUNNINGHAM and DINKELACKER, JJ., concur.
[1] R.C. 2941.145(A).
[2] State v. Gaines (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, syllabus.
[3] State v. Murphy (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, syllabus.
[4] See State v. Griffin (Dec. 11, 1998), 1st Dist. No. C-980143.
[5] State v. Beuke (1988), 38 Ohio St.3d 29, 31, 526 N.E.2d 274.
[6] See State v. Bradley (1989), 42 Ohio St.3d 136, 142,538 N.E.2d 373; Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[7] State v. Haynes, 1st Dist. No. C-020685, 2004-Ohio-762.
[8] Neil v. Biggers (1972), 409 U.S. 188, 199-200, 93 S.Ct. 375.
[9] R.C. 2941.25(A).
[10] 148 Ohio App.3d 246, 2002-Ohio-3536, 772 N.E.2d 726, at ¶ 13.
[11] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[12] See id. at 387.
[13] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraphs one and three of the syllabus.
[14] Id. at paragraphs two and four of the syllabus. *Page 1